FRANKLIN DANEKAS, Plaintiff-Appellant, *v.* KENNETH WISE *et al.,* Defendants-Appellees.

Second District   No. 77-455

Opinion filed October 17, 1978.

Robert G. Coplan, of Connolly, Oliver, Goddard, Coplan & Close, of Rockford, for appellant.

Lawrence Gunnels and James D. Adducci, both of Kirkland & Ellis, and Reuben & Proctor, both of Chicago, and Bruce D. Wellman, of Mt. Morris, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The plaintiff appeals from a summary judgment granted to the defendants in a libel suit arising out of an editorial published in the defendant newspaper.

The plaintiff was formerly—several years previous to the libel suit being filed—chief of police of Rochelle. However, at the time of the libel action he was only a patrolman. The allegedly libelous editorial stated that a certain council member was attempting to get the plaintiff reinstated as police chief, or at least assistant chief, of Rochelle and deplored this possibility because, it said, Danekas had run a "mickey mouse" force while he was chief. The editorial said Danekas had been guilty of illegal and unprofessional conduct while in office, had arranged or condoned the burglary of a political opponent's business office, had deliberately ignored and neglected to prosecute another burglary, had secretly given information from the police files to an attorney for use in litigation against the city and had insulted and attempted to undermine the authority of the present chief.

The complaint for libel stated that all of the charges against the plaintiff were "false and known by the defendants to be false and defendants' publication thereof was with total and reckless disregard for the truth or falsity of any of said charges. That both the expressed language and the clear import of the allegations made in the aforesaid publication is that the plaintiff has been guilty of the commission of various criminal offenses all of which are false and totally without foundation in fact." The plaintiff alleged that as a result of the libel he had been damaged both as a public official and as a private citizen and he demanded $1,000,000 in compensatory and punitive damages.

The answer of the defendants admitted the publication of the article in question and that the defendant, Wise, was the author, but pointed out that the plaintiff was a public official and contended that the editorial was true or substantially true in all of its allegations and constituted fair comment about a public official under United States and Illinois constitutional privileges protecting free speech. In answer to the plaintiff's interrogatories concerning the basis for the defendants' allegations, the defendants supplied depositions, affidavits and public records indicating the sources of information, in addition to Wise's own knowledge and memory, which Wise relied on in writing the allegedly libelous editorial.

The defendants then moved for summary judgment on the basis that the plaintiff is a public official; that the editorial was not published with actual malice, that is with knowledge of its falsity or reckless disregard of its truth or falsity; that the plaintiff had failed to claim special or actual damages as a result of the publication, and that based on the defendants' pleadings, depositions and affidavits on file there is no genuine issue as to a material fact.

The trial court, after considering the pleadings, affidavits, briefs and arguments of counsel, granted the defendants' motion for summary judgment. The court stated in its opinion sustaining the motion that under *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, the first amendment to the Constitution "protects a newspaper from liability for defamatory misstatements except where there is clear and convincing evidence of the newspaper's knowing or reckless falsity," and the court found that a showing of actual malice was lacking.

In this appeal, the plaintiff contends the trial court erred in granting the motion for summary judgment because "there is substantial evidence upon which a jury could properly find that the publication was made with 'actual malice' as defined by the *New York Times* rule." The plaintiff has not, however, provided any evidence that would indicate actual malice on the part of the defendant, Wise, author of the offending article, and he relies on deductions or arguments based on (1) the length of time between the alleged acts or failures of the plaintiff and the publication of the editorial in question and (2) that no criminal action was ever filed against the plaintiff while he was police chief, implying doubt as to the validity of the charges against him.

■■■ In a libel action against a newspaper, however, the plaintiff must come forth with something more than deductions and arguments based upon the publication to establish a *prima facie* case of malice. Under the *New York Times* rule, he must show evidence—not proof, but at least evidence—of actual malice on the defendant's part in making the

publication. Thus, actual malice cannot be deduced from mere passage of time, as indicating ignorance or recklessness as to the facts, nor can malice be assumed from an accusation of wrongdoing, which is not followed up by a criminal prosecution. Neither of these factors even indicate that a statement is false, let alone indicating that it was made knowing that it was false, or with indifference to its truth or falsity.

Moreover, in this particular case, the inference of malice, based on a gap in time between the alleged conduct and the publication, is repudiated by the defendant's deposition explaining the reason for the editorial comment. The deposition, as well as the editorial itself, clearly indicates that the defendant, Wise, was motivated to editorialize as he did on the position of police chief in Rochelle, because he had just been informed by one of the councilmen of the City of Rochelle that another councilman of Rochelle was maneuvering to bring the plaintiff back to a position of power—either that of chief or assistant chief—in the city police administration. The defendant, Wise, indicates very clearly, both in the editorial itself and in his deposition, that it was this current maneuvering which inspired the editorial and that his comments were the result of his belief that immediate action was necessary to enlist public support for the present police chief and forestall the movement to restore the plaintiff's influence. In his deposition, Wise relates that the editorial was written and published after he learned from a council member of the possibility of a movement to reappoint Danekas, about 2 weeks before the question of reappointment of the present police chief was to come before the council. Therefore, he had to act quickly to make his viewpoint known. The concluding paragraphs of the editorial confirm that the matter was of current interest to the public:

> "Or do we read the community wrong? Does the community stand behind the removal of Winston Brass?
>
> We would like to hear from the residents and we are sure the members of the council want the feelings of the voters."

The timing of the editorial, therefore, appears to be due to a newly arisen situation and the lag in time between the conduct in question and the publication thus carries no implication of falsity or doubt.

As to the suggestion at oral argument that the failure to prosecute the plaintiff for his alleged misconduct in office infers his innocence of any wrongdoing, it is noted that Commissioner McCaslin's deposition relates that while the plaintiff was police chief in 1969, he was asked by the city council to resign and at his own request was then reduced to the rank of detective and ended up eventually in the rank of patrolman. Some time later, while he was a patrolman, he was suspended from active duty for 5 days for publicly referring to the current police chief, Winston Brass (who

was a Pakistani), as a "nigger." It can hardly be seriously maintained that no official notice was taken of the plaintiff's conduct in view of the investigation of his office, his subsequent resignation as police chief and his later suspension for insulting the current police chief. Thus, while the plaintiff was not prosecuted, the facts cited above do not indicate a lack of substance to the rumors of his official misconduct.

It is not our function to determine the truth or falsity of the statements made in the defendants' editorial and we comment above, not for that purpose, but only because the plaintiff has used the arguments of forebearance and lag in time as evidence of doubt from which arises a suggestion of malice. While malice could not in any case be predicated on a mere theory, it is perhaps only fair to point out that certain evidence before us contradicts the theory, and therefore the attribution of malice.

■■ Stating it as succinctly as we can, the issue before us is whether the plaintiff has presented sufficient evidence to raise a triable issue as to whether or not the publication in question reflected actual malice, that is, whether it was knowingly false or made with reckless indifference as to whether or not it was false. In view of the depositions and affidavits offered in evidence by the defendants, which have not been controverted factually by the plaintiff, this threshold question must, we think, be answered in the negative.

As the trial judge remarked in his opinion sustaining the motion for summary judgment, "[t]he article published in the defendant's newspaper is not bland. It dispraises public officials very extensively." There is no question but that the editorial was damaging to the plaintiff, but under the constitutional standards set by *New York Times Co. v. Sullivan*, the plaintiff must establish actual malice and this implies not only falsity, but knowing or reckless falsity. In this case the evidence submitted at the pleading stage indicates the opposite and clearly overcomes the general allegations in the complaint, standing by themselves. Thus, we think the plaintiff has failed to raise a triable issue as to the required element of actual malice. The corroborative details and the sources thereof supplied by the defendants' answers to the plaintiff's interrogatories, as supported by official documents and depositions of witnesses in a position to know the facts, indicate at the very least an absence of actual malice, within *New York Times* standards. Since this material was not controverted by any factual data offered by the plaintiff, no genuine issue was raised as to the material fact of actual malice.

It is not, of course, necessary for either party at the pleading stage to prove the truth or the falsity of the allegations, but it is certainly incumbent on the plaintiff to come forward with sufficient evidence to raise a triable issue as to whether the statements in question were

knowingly false or were false and made with indifference as to their truth or falsity. This *New York Times* doctrine has been expanded and clarified in many cases since then. See *Beckley Newspapers Corp. v. Hanks* (1967), 389 U.S. 81, 19 L. Ed. 2d 248, 88 S. Ct. 197; *St. Amant v. Thompson* (1968), 390 U.S. 727, 20 L. Ed. 2d 262, 88 S. Ct. 1323; *Time, Inc. v. Pape* (1971), 401 U.S. 279, 28 L. Ed. 2d 45, 91 S. Ct. 633; *Ocala Star-Banner Co. v. Damron* (1971), 401 U.S. 295, 28 L. Ed. 2d 57, 91 S. Ct. 628; *Tunnell v. Edwardsville Intelligencer, Inc.* (1969), 43 Ill. 2d 239; *Farnsworth v. Tribune Co.* (1969), 43 Ill. 2d 286; *Guthrie v. Annabel* (1977), 50 Ill. App. 3d 969.

The plaintiff cites the case of *Weber v. Woods* (1975), 31 Ill. App. 3d 122, in his behalf. That case is distinguishable, however, from the present case in that in the *Weber* case the defendant had actual notice that the lie detector test he relied on and discussed in making his defamatory utterance, had been repudiated by the police department as insufficient evidence and the plaintiff, contrary to the defendant's published statement, had not been dismissed from the police force. The defendant's actual knowledge, from a copy of the report—which he had initialed— that the lie detector test had not been accepted as a basis for and had not resulted in the plaintiff's dismissal, as the defendant had stated—raised a triable issue as to actual malice and precluded a disposition of the case on summary judgment. That case, of course, is not applicable here since here there was no showing by the plaintiff that the allegations were false or that they were recklessly made with indifference as to their truth or falsity.

We hold that the editorial in question was not actionable under the constitutional principles laid down by *New York Times Co. v. Sullivan* and later cases and, there being no showing of actual malice in the publication, summary judgment was properly granted.

The judgment of the circuit court of Ogle County is affirmed.

Judgment affirmed.

GUILD and NASH, JJ., concur.