**Gary WILLIS and Dwayne Parish, Plaintiffs-Appellants,**

v.

**Larry PERRY, Defendant-Appellee.**

**No. 80CA1011.**

Colorado Court of Appeals, Div. II.

Dec. 22, 1983.

Rehearing Denied Jan. 19, 1984.

Ralph B. Rhodes, W. Stephen McCormick, Denver, for plaintiffs-appellants.

Baker & Hostetler, P.C., James A. Clark, Bruce Pringle, Kathryn Nielson, Denver, for defendant-appellee.

VAN CISE, Judge.

This action was brought by plaintiffs, Gary Willis and Dwayne Parish, Denver police officers, against defendant, Larry Perry, a Denver city councilman, seeking damages for alleged defamatory statements and outrageous conduct. The trial court directed a verdict for defendant Perry and dismissed the action. Plaintiffs appeal. We affirm.

While on patrol on May 13, 1978, plaintiffs saw a speeding car. Turning on their red light, they began chasing the vehicle. A police helicopter and several other police vehicles became involved in the chase. The driver of the car was stopped after approximately 20 minutes of chase and taken into custody.

That night, Councilman Perry was driving in his district. His car was equipped with a police radio and a flashing red portable light. Upon hearing on his police radio about the chase, Perry joined in. At the end of their shift the night of this chase, plaintiffs prepared a memorandum to their supervisor criticizing Perry's involvement in the chase.

Perry was contacted by a reporter for the Rocky Mountain News concerning the incident. The reporter then wrote an article which was published by the News on May 20, which stated in part:

"He [Perry] said 'two bad apples' in District 1 are 'out to get' him because of his vote on police pay increases and his chairmanship of the police review committee.

"Perry said the officers he referred to are Patrolmen Gary Willis and Dwayne Parrish, both of whom were involved in Sunday's 22 minute chase.

. . . .

"Since being criticized for his Sunday action, Perry has said officers in the chase 'broke all the rules in the police manual.' He has called for an investigation of police chase procedures."

Shortly after this article was published, plaintiffs commenced this action. In their first claim, they alleged that the statements "two bad apples" and "broke all the rules in the police manual" were untrue, defamed and damaged them, and were

made by Perry with knowledge of their falsity or in reckless disregard as to whether they were true or false. In their second claim they alleged that publication of the statements caused them severe emotional distress and constituted outrageous conduct. Perry admitted making the statements to the reporter, but denied the other allegations. He further claimed that plaintiffs were public officials and, as such, were subject to the "constitutional privileges."

At the close of plaintiffs' case, the trial court directed a verdict for Perry. It determined that the subject statements were not libelous per se and that, since no special damages had been pled or proved, an actionable case of libel per quod had not been established. Further, the words "bad apples" were held to be a nonactionable expression of opinion based on disclosed facts. The court also found the plaintiff police officers were public officials and, therefore, to prevail in this case, they would need to meet the "actual malice" standard set out in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In effect, it held that that standard had not been met.

■ On appeal, plaintiffs contend, and we agree, that Perry's statements to the reporter subsequently published in the newspaper should be reviewed under the standards applicable to libel rather than slander. As stated in *Restatement (Second) of Torts* (1977) § 568, comment f:

"A publication of a libel may be made by an oral communication that is intended to be, and is, reduced to writing ... or when a statement is given orally to a newspaper reporter and is published in the paper."

*See Spears Free Clinic & Hospital For Poor Children v. Maier,* 128 Colo. 263, 261 P.2d 489 (1953).

■ We do not agree with plaintiffs' contention that the trial court erred in finding that plaintiffs, as police officers, were public officials.

In *Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), the United States Supreme Court set forth the test for determining whether a person is a public official:

"[Public officials] have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs [and their position] has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the qualifications and performance of all governmental employees."

We agree with the statement in *Gray v. Udevitz,* 656 F.2d 588 (10th Cir.1981):

"Gray's status as a police officer in Rock Springs made him a public official. *Street level policemen, as well as high ranking officers, qualify as public officials under the test of Rosenblatt v. Baer,* 383 U.S. 75 [86 S.Ct. 669, 15 L.Ed.2d 597] (1966).... The cop on the beat is the member of the department who is most visible to the public. He possesses both the authority and the ability to exercise force. Misuse of his authority can result in significant deprivation of constitutional rights and personal freedoms, not to mention bodily injury and financial loss. The strong public interest in ensuring open discussion and criticism of his job qualifications and job performance warrant the conclusion that he is a public official." (emphasis added)

Other cases in which the court concluded, as a matter of law, that a police officer is a public official include: *Moriarty v. Lippe,* 162 Conn. 371, 294 A.2d 326 (1972) (patrolman); *Angelo v. Brenner,* 84 Ill.App.3d 594, 40 Ill.Dec. 337, 406 N.E.2d 38 (1980) (city policeman); *Roche v. Egan,* 433 A.2d 757 (Me.1981) (detective in town police department); *Hirman v. Rogers,* 257 N.W.2d 563 (Minn.1977) (deputy sheriff and police officers); *NAACP v. Moody,* 350 So.2d 1365 (Miss.1977) (highway patrolman); *Shafer v. Lamar Publishing Co.,* 621 S.W.2d 709 (Mo.App.1981) (policeman); *LaRocca v. New York News, Inc.,* 156 N.J.

Super. 59, 383 A.2d 451 (1978) (policeman); *Ammerman v. Hubbard Broadcasting, Inc.*, 91 N.M. 250, 572 P.2d 1258 (1977) (deputy sheriff); *Malerba v. Newsday, Inc.*, 64 App.Div.2d 623, 406 N.Y.S.2d 552 (1978) (patrolman); *Cline v. Brown*, 24 N.C.App. 209, 210 S.E.2d 446 (1975) (deputy sheriff); *McClain v. Arnold*, 275 S.C. 282, 270 S.E.2d 124 (1980) (police officer); *Columbo v. Times-Argus Association, Inc.*, 135 Vt. 454, 380 A.2d 80 (1977) (police officer).

■ As public officials, it was plaintiffs' burden to prove by "clear and convincing evidence" that, at the time Perry made the statements, he acted with "actual malice" as defined in *New York Times v. Sullivan, supra;* i.e., that Perry knew that the statements were false or that he made them with reckless disregard of whether they were false or not. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *New York Times v. Sullivan, supra.* To establish reckless disregard, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). *See Diversified Management, Inc. v. Denver Post, Inc.*, 653 P.2d 1103 (Colo.1982); *Manuel v. Ft. Collins Newspapers, Inc.*, 661 P.2d 289 (Colo.App.1982).

■ Plaintiffs failed to prove "by clear and convincing evidence" or, indeed, at all, that Perry had acted with "actual malice" as above defined. Directing the verdict under these circumstances was required.

In view of our disposition of this appeal on the basis of failure to prove "actual malice," we do not address plaintiffs' claims that the trial court erred in the other grounds relied on by it in directing the verdict.

Judgment affirmed.

SMITH and KELLY, JJ., concur.